[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------
No. 99-8104
-------------------------------------------
D. C. Docket No. 97-01487-1-CV-RWS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 30, 2000
THOMAS K. KAHN
CLERK

GARRETT HUDSON, T. SHERROD MEADOWS, et al.,

Defendants-Appellees-Cross-Appellants,

versus

J. T. HALL, individually and in his capacity as a police officer
for the Clayton County Police Department,

Plaintiff-Appellant-Cross-Appellee,

RONNIE CLACKUM, Chief, in his official capacity as Chief
of police for Clayton County, CLAYTON COUNTY, GEORGIA,

Plaintiffs-Cross-Appellees.

----------------------------------------------------------------
Appeals from the United States District Court
for the Northern District of Georgia
----------------------------------------------------------------
**(October 30, 2000)**
Before EDMONDSON, HULL and WOOD*, Circuit Judges.

---

*Honorable Harlington Wood, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by
designation.

EDMONDSON, Circuit Judge:

Garrett Hudson, T. Sherrod Meadows, and Shedrick Gaston ("Plaintiffs") brought suit under 42 U.S.C. § 1983 against Clayton County Police Officer J.T. Hall ("Officer Hall"). Plaintiffs alleged that Officer Hall violated Plaintiffs' Fourth Amendment rights during a traffic stop. Officer Hall moved for summary judgment on qualified immunity grounds. The district court – concluding that Officer Hall was entitled to qualified immunity on some, but not all, of Plaintiffs' claims – granted in part and denied in part the motion.

Officer Hall appeals the district court's partial denial of qualified immunity, and Plaintiffs cross-appeal the partial grant of qualified immunity to Officer Hall. On Officer Hall's appeal of the partial denial of qualified immunity, we affirm in part and reverse in part. And, on Plaintiffs' appeal of the partial grant of qualified immunity to Officer Hall, we affirm.[1]

---

[1] We address in today's decision only Officer Hall's qualified immunity from personal liability. Plaintiffs also brought suit in the district court against Clayton County, Clayton County Police Chief Ronnie Clackum in his official capacity, and Officer Hall in his official capacity. The district court – finding no evidence of a custom or policy under Monell v. Dep't of Social Services, 98 S. Ct. 2018 (1978), and its progeny – granted summary judgment to the county and the official capacity defendants. Plaintiffs sought to cross-appeal the summary judgment for the county and the official capacity defendants. But, the district court's grant of summary judgment to the county and the official capacity defendants – because some claims remained against Officer Hall individually – is not an appealable final judgment. See 28 U.S.C. § 1291; see also Williams v. Bishop, 732 F.2d 885, 886 (11th Cir. 1984) (concluding that grant of summary judgment for "fewer than all the claims or parties" is not appealable final judgment). And, the district court's grant of summary judgment to the county and the official capacity defendants does not fall within our pendent appellate jurisdiction. See Swint v. Chambers County Comm'n,

2

I.

A.

On 26 May 1995, Plaintiff Garrett Hudson ("Hudson") was driving his car in Clayton County, Georgia.[2] Plaintiffs T. Sherrod Meadows ("Meadows") and Shedrick Gaston ("Gaston") were passengers in Hudson's car. Hudson turned right from a gas station onto Tara Boulevard. When Hudson made this right turn, he failed to use a turn signal.

Officer Hall saw Plaintiffs' car turn onto Tara Boulevard without using a turn signal, and he stopped their car. Officer Hall got out of his car, approached the driver's side of Plaintiffs' car, and explained why he had stopped Plaintiffs. He asked

115 S. Ct. 1203, 1212 (1995). So, we dismiss Plaintiffs' cross-appeal of the district court's grant of summary judgment to the county and the official capacity defendants.

[2] Because this case comes to this Court at the summary judgment stage, we must view the record in the light most favorable to Plaintiffs. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000). But, we stress that the "facts" set out in this opinion – the "facts" that we must assume for the purposes of this appeal – may turn out not to be the actual facts of this case. See id.

Officer Hall's account of the pertinent events is quite different from Plaintiffs' accounts in several respects. For example and most important, according to Officer Hall, both Hudson and Gaston consented to a search of their persons. But, for the purposes of this appeal, we must accept Plaintiffs' version of the pertinent events.

Hudson to get out of the car, and Hudson did so. Officer Hall and Hudson walked to the rear of Plaintiffs' car.

At that point, Officer Hall searched Hudson's person. Officer Hall did not ask for and did not receive Hudson's consent before conducting the search. Hudson was wearing a t-shirt and shorts. Officer Hall patted down Hudson's clothing, reached into Hudson's pockets, instructed Hudson to lift his shirt, and looked into Hudson's shorts and underwear. After searching Hudson, Officer Hall asked Hudson for consent to search Plaintiffs' car. Hudson consented to a search of the car. Officer Hall proceeded to then search the car.

Officer Hall – either just before or during his search of the car – asked Meadows and Gaston to get out of the car. Meadows and Gaston complied. After they left the car, Officer Hall asked Meadows for consent to search Meadows' person. Meadows initially refused consent. Officer Hall then said: "If you don't want to be searched, start walking." Meadows then consented to a search. Meadows was wearing a t-shirt and shorts. Officer Hall patted down Meadows' clothing, reached into Meadows' pockets, and looked into Meadows' shorts.

After searching Meadows, Officer Hall approached Gaston and searched Gaston's person. Officer Hall did not ask for and did not receive Gaston's consent to search. Officer Hall patted down Gaston's clothing and reached into Gaston's

4

pockets. He did not look, however, into Gaston's pants.[3] Officer Hall's searches of Plaintiffs and of the car revealed no contraband. Officer Hall instructed Plaintiffs to return to their car and to leave the scene.

## B.

Plaintiffs brought suit under 42 U.S.C. § 1983, alleging that Officer Hall violated Plaintiffs' Fourth Amendment rights in several ways during the traffic stop. In particular, Plaintiffs alleged: (1) that Officer Hall unlawfully stopped Plaintiffs' car; (2) that Officer Hall unlawfully searched the interior of Plaintiffs' car; and (3) that Officer Hall unlawfully searched Plaintiffs' persons. Officer Hall moved the district court for summary judgment on qualified immunity grounds.

The district court granted Officer Hall's motion in part, and denied the motion in part. The district court concluded that Officer Hall was entitled to qualified immunity for the initial traffic stop because, when Officer Hall stopped Plaintiffs' car, Officer Hall had probable cause to believe that the driver (Hudson) had committed a traffic offense. And the district court concluded that Officer Hall was entitled to

---

[3] Gaston testified at his deposition that Officer Hall did not pull out and did not look into Gaston's pants. Gaston also testified that he did not see Officer Hall look into Hudson's and Meadows' shorts.

qualified immunity for the search of Plaintiffs' car because Hudson freely and voluntarily consented to the search of the car.

The district court, however, concluded that Officer Hall was due no qualified immunity – at least, not at the summary judgment stage – for searching Plaintiffs' persons. First, the district court said that – accepting Plaintiffs' version of the facts – a reasonable officer in Officer Hall's circumstances would have known that he lacked Plaintiffs' free and voluntary consent to search their persons. Second, the district court said that – even assuming that Plaintiffs consented to a search of their persons – Officer Hall clearly exceeded the scope of such consent by looking into Plaintiffs' pants.

## II.

Because we are a court of limited jurisdiction, see 28 U.S.C. § 1291 (permitting appeals of "all final decisions of the district courts" to courts of appeal), we first must examine our own jurisdiction in this case. As a general rule, an appeal may be taken under 28 U.S.C. § 1291 only where the district court has disposed of all claims against all parties. See Williams v. Bishop, 732 F.2d 885, 886 (11th Cir. 1984) (concluding that grant of summary judgment for "fewer than all the claims or parties" is not

6

appealable). But, an exception to the general rule exists in qualified immunity cases: "A public official may file an interlocutory appeal of the denial of qualified immunity where the disputed issue is whether the official's conduct violated clearly established law." Stanley v. City of Dalton, ___ F.3d ___, ___ (11th Cir. 2000); see also Hartley v. Parnell, 193 F.3d 1263, 1270 (11th Cir. 1999) ("[C]ourts of appeal have jurisdiction to review interlocutorily denials of summary judgment based on qualified immunity . . . ."). In his appeal of the district court's denial of qualified immunity, Officer Hall asserts that his conduct violated no clearly established law and that the district court erred in concluding otherwise. We properly have jurisdiction of Officer Hall's appeal.

Our jurisdiction over Plaintiffs' cross-appeal, however, is less certain. Plaintiffs cross-appeal the district court's partial grant of qualified immunity to Officer Hall. The jurisdictional exception for qualified immunity cases – allowing interlocutory appeals from the denial of qualified immunity – does not encompass Plaintiffs' cross-appeal. So, we have jurisdiction of Plaintiffs' cross-appeal only if it properly falls within our pendent appellate jurisdiction.

Under the pendent appellate jurisdiction doctrine, we "may address [otherwise] nonappealable orders if they are 'inextricably intertwined' with an appealable decision or if 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" Summit Med. Assoc., P.C. v. Pryor, 180 F.3d 1326, 1335 (11th Cir. 1999);

7

see also Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1212 (1995); Tamiami

Partners, Ltd. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1221-22 (11th

Cir. 1999); Moniz v. City of Fort Lauderdale, 145 F.3d 1278, 1281 n.3 (11th Cir.

1998); Harris v. Board of Educ. of City of Atlanta, 105 F.3d 591, 594 (11th Cir.

1997); United States v. Lopez-Lukis, 102 F.3d 1164, 1167 n.10 (11th Cir. 1997).

As we have explained, we independently have jurisdiction of Officer Hall's

appeal. Because the issues raised by Plaintiffs' cross-appeal are sufficiently related

to and intertwined with Officer Hall's appeal, we conclude that Plaintiffs' cross-

appeal of the partial grant of qualified immunity to Officer Hall falls within our

pendent appellate jurisdiction.[4] See Lopez-Lukis, 102 F.3d at 1167 n.10 (finding

issues sufficiently related to permit exercise of pendent appellate jurisdiction); cf.

Tamiami Partners, 177 F.3d at 1221-22 (concluding issues not sufficiently related to

permit exercise of pendent appellate jurisdiction). For the sake of judicial economy,

---

[4] In deciding Officer Hall's appeal, we must consider whether Officer Hall's search of
Plaintiffs' persons clearly was unlawful given the totality of the circumstances. See United
States v. Garcia, 890 F.2d 355, 358 (11th Cir. 1989). In examining the totality of the
circumstances – and especially because Officer Hall says that Plaintiffs freely and voluntarily
consented to searches of their persons – we must take into account whether Officer Hall's initial
stop and search of Plaintiffs' car clearly were unlawful. See, e.g., United States v. Valdez, 931
F.2d 1448, 1452 (11th Cir. 1991) (finding that consent to search was tainted by unlawful traffic
stop and, therefore, was not free and voluntary); United States v. Miller, 821 F.2d 546, 549-50
(11th Cir. 1987) (same). In other words, to decide whether every reasonable officer in Officer
Hall's position would have known that Plaintiffs had not consented voluntarily to a search of
their persons, we must consider, among other things, whether Plaintiffs' consent (if any) was
tainted by an illegal traffic stop and, more important, whether every reasonable officer would
have been aware of such taint.

we choose to exercise this pendent appellate jurisdiction over Plaintiffs' cross-appeal of the partial grant of qualified immunity to Officer Hall.

III.

We turn now to the question of Officer Hall's entitlement to qualified immunity. "Qualified immunity protects government officials performing discretionary functions . . . from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc); see also Stanley v. City of Dalton, ___ F.3d ___, ___ (11th Cir. 2000); Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1295 (11th Cir. 1998); GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).

For the law to be clearly established to the point that qualified immunity does not protect a government official, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Lassiter, 28 F.3d at 1150. And, of course, whether a

9

defendant has violated a constitutional right at all is a "necessary concomitant" to the question of qualified immunity: if a defendant has not violated the law at all, he certainly has not violated clearly established law. GJR Investments, 132 F.3d at 1366-67.

A.

Plaintiffs contend that the district court erred in awarding qualified immunity to Officer Hall for his initial stop of Plaintiffs' vehicle. That a police officer may conduct a traffic stop where the officer has probable cause to believe that a traffic violation has occurred is well-settled. See Whren v. United States, 116 S. Ct. 1769, 1772 (1996); see also United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). The record is clear that Officer Hall stopped Plaintiffs after he saw Hudson turn from a gas station onto a busy public highway without using a turn signal. The ultimate question in this case, therefore, is whether Officer Hall clearly lacked probable cause to believe that Hudson – by turning from a gas station without a turn signal – violated the traffic laws of Georgia.

The relevant Georgia statute provides in pertinent part:

(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code Section 40-6-

10

120 or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section.

(b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

O.C.G.A. § 40-6-123(a)-(b). Plaintiffs say that this statute does not apply at all to vehicles turning from private driveways onto public roadways; Plaintiffs argue that such a turn is not a turn "upon a roadway."

From the plain language of the statute, that the statute is inapplicable to vehicles turning from private driveways onto public roadways is not obvious. Indeed, the plain language of the statute seems to admit a construction reaching private driveways. And, the parties cite – and we have found – no Georgia cases deciding (or even suggesting) that the statute is inapplicable to turns from private driveways onto public roadways. In other words, even if O.C.G.A. § 40-6-123 actually is inapplicable to Hudson's turn, the law was less than clearly established that O.C.G.A. § 40-6-123 did not apply.[5]  We must conclude that a reasonable officer in Officer Hall's

_____

[5]We recognize that the Supreme Court has written that generally we should – when we adjudicate qualified immunity cases – first decide whether the defendant has violated federal law at all before considering whether the law was clearly established. See Wilson v. Layne, 119 S. Ct. 1692, 1697 (1999); see also County of Sacramento v. Lewis, 118 S. Ct. 1708, 1714 n.5 (1998). According to the Supreme Court, such an approach facilitates the development of

11

circumstances could have determined that probable cause existed to justify a stop of Plaintiffs' car.[6]  The district court, consequently, did not err in granting qualified immunity to Officer Hall for his initial stop of Plaintiffs' car.

B.

federal constitutional law.  See Lewis, 118 S. Ct. at 1714 n.5.  Our Circuit now follows that practice, see Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999), although it means that we often decide close questions of constitutional law when we know that no party in the case before us will be affected by that decision.  And at times, some of us do wonder if this abstract development is the kind of development of constitutional law that should be encouraged.  But we do not think that the Supreme Court's suggested approach is – without exceptions – required absolutely, and we decline to follow that approach in this instance.

In this case, whether probable cause existed – and, whether the Fourth Amendment was violated – turns upon a difficult question of state law.  If we followed here the approach set out in Wilson and in Lewis, we would be required to determine whether O.C.G.A. § 40-6-123 applies to turns from private driveways onto public roadways before we reached the clearly-established question.  And, to determine the true scope of O.C.G.A. § 40-6-123 – insofar as the plain language of the statute does not seem clear and no Georgia case law exists to guide us – we would need to certify the question to the Georgia Supreme Court.  Yet, certification – at least in this case – would be an exercise in futility and a waste of the time and resources of both this Court and the Georgia Supreme Court.  Indeed, regardless of the answer delivered by the Georgia Supreme Court, Officer Hall would be entitled to qualified immunity.  We are unwilling to engage in – and we do not believe the Supreme Court intended to require – so vain a gesture.  "General propositions do not decide concrete cases."  Lochner v. New York, 25 S. Ct. 539, 547 (1905) (Holmes, J., dissenting).

[6]Plaintiffs also argue that – even if O.C.G.A. § 40-6-123 governs turns from private driveways onto public roadways – Hudson was not required to use a turn signal in the circumstances.  Plaintiffs correctly note that the statute requires no turn signal "as long as a [turn] can be made with 'reasonable safety.'"  Bowers v. State, 473 S.E.2d 201, 203 (Ga. App. 1996); see also State v. Goodman, 469 S.E.2d 327, 329 (Ga. App. 1996); Clark v. State, 432 S.E.2d 220, 221 (Ga. App. 1993).  But, we think that – if O.C.G.A. § 40-6-123 applies at all to Hudson's turn – "reasonable safety" might have required Hudson to use a turn signal in these circumstances: Hudson was turning onto a multi-lane highway in heavy traffic.  Cf. Knight v. State, 506 S.E.2d 245, 246-47 (Ga. App. 1998) (turn signal required where driver executed lane change in heavy traffic).

12

Plaintiffs also contend that the district court erred in awarding qualified immunity to Officer Hall for his search of Plaintiffs' car. We cannot agree. The record is clear that Officer Hall asked Hudson for consent to search before he searched Plaintiffs' car. And, the record is equally clear that Hudson consented to a search of the car. The only issue disputed by the parties is whether Hudson's consent was voluntary.

"In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). In considering whether a consent to search was voluntary, we examine the totality of the circumstances. United States v. Tovar-Rico, 61 F.3d 1529, 1535 (11th Cir. 1995); see also United States v. Gonzalez, 71 F.3d 819, 828-32 (11th Cir. 1996) (illustrating factors properly to be considered in totality of circumstances inquiry). We conclude – as did the district court – that Hudson voluntarily consented to the search of Plaintiffs' car. Officer Hall did not threaten force or violence against Hudson. Officer Hall was not verbally abusive toward Hudson. Officer Hall explained to Hudson why he was stopped: for a minor traffic offense. And, Officer Hall did not suggest to Hudson that Hudson had no choice but

to consent.[7]  The district court accordingly did not err in awarding Officer Hall qualified immunity for his search of Plaintiffs' car.

C.

Officer Hall argues that the district court erred in denying qualified immunity for the searches of Plaintiffs' persons.  The district court based its partial denial of qualified immunity to Officer Hall on two different ideas: (1) that Officer Hall searched Plaintiffs' persons without any voluntary consent at all; and (2) that, even if Plaintiffs voluntarily consented to some search of their persons, they did not consent to the search that Officer Hall conducted.  We address the district court's reasons in turn.

Because a disputed issue of material fact exists about whether Hudson and Gaston consented at all to a search of their persons, the district court correctly denied qualified immunity for the searches of Hudson and Gaston.  Hudson and Gaston

---

[7]Plaintiffs argue that Hudson's consent was tainted by Officer Hall's unlawful stop of Plaintiffs' car.  As we have explained – even assuming Officer Hall lacked probable cause to stop Plaintiffs' car – the illegality of the initial traffic stop was not obvious under clearly established law.  Therefore, even if the initial stop was unlawful and did taint Hudson's consent, a reasonable officer in Officer Hall's circumstances might not have known that Hudson's consent was thus tainted.  Accordingly, the potential taint of the initial traffic stop would not deprive Officer Hall of qualified immunity.

14

testified that Officer Hall neither requested nor received their consent to a search of their persons. At the summary judgment stage, we must accept Hudson's and Gaston's testimony. We accept that, in the absence of voluntary consent, Officer Hall's search of Hudson and Gaston was unlawful.[8] And, no reasonable officer in Officer Hall's circumstances could have understood no consent at all to constitute a voluntary consent. Accordingly, Officer Hall is not due qualified immunity – at the summary judgment stage, at least – for the claim that he unlawfully searched Hudson and Gaston without their consent.

The district court, however, did err in denying Officer Hall qualified immunity for the claim that he unlawfully searched Meadows without his consent. The record is clear that Meadows actually consented to Officer Hall's search of his person. But, the district court found – and Plaintiffs urge – that Meadows' consent was not voluntary, but was coerced by Officer Hall's statement: "If you don't want to be searched, start walking." For the sake of discussion, we accept, given all of the circumstances, that Officer Hall's statement actually was coercive and did render Meadows' consent involuntary.

---

[8]Very important, Officer Hall urges no justification for the searches except consent. We, therefore, do not decide whether some other rationale might justify the searches of Plaintiffs' persons.

But the impropriety of Officer Hall's statement is not plain. As the Supreme Court has recognized, a police officer performing his lawful duties may direct and control – to some extent – the movements and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing. See Maryland v. Wilson, 117 S. Ct. 882, 886 (1997) (holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"); see also Michigan v. Summers, 101 S. Ct. 2587, 2594 (1981) ("The risk of harm to both the police and the occupants [of a home during a search] is minimized if the officers routinely exercise unquestioned command of the situation."). We expect that, in some circumstances, a police officer conducting a traffic stop may properly direct passengers – for example, if they refuse to permit the officer to search their persons for weapons – to walk a reasonable distance away from the officer.

The parties have cited (and we have found) no pre-1995 case holding that a similar statement in similar circumstances was sufficiently coercive to render an otherwise-voluntary consent involuntary. We have written:

> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

16

Lassiter, 28 F.3d at 1150 (quoting Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1575 (11th Cir. 1992) (Edmondson, J., dissenting)) (citation omitted). This idea is especially true when the inquiry is as heavily fact-dependent as is the "voluntariness" inquiry. See Schneckloth v. Bustamonte, 93 S. Ct. 2041, 2047 (1973) (surveying case law on voluntariness of consent to search and explaining that "none of [the prior decisions] turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances"). Therefore, because the impropriety of Officer Hall's statement was not obvious and because no materially similar, pre-existing case law was around, a reasonable police officer in the circumstances might not have known that Meadows' consent was involuntary. Accordingly, Officer Hall is entitled to qualified immunity for his search of Meadows.

We also disagree with the district court's second explanation for denying qualified immunity. In a consent search, the scope of the consent given governs the scope of the search that may be conducted. United States v. Hidalgo, 7 F.3d 1566, 1570 (11th Cir. 1993). We think that in the circumstances of this case, if Plaintiffs consented generally to a search of Plaintiffs' persons for drugs and weapons – without articulating specific limits on that consent – Officer Hall did not exceed the scope of consent just by looking into Hudson's and Meadows' pants. After all, drug dealers

17

and couriers "frequently hide drugs near their genitals." United States v. Rodney, 956 F.2d 295, 297 (D.C. Cir. 1992). And, very important, we are not dealing here with a case where the officer actually touches the suspect's genitals, see, e.g., United States v. Blake, 888 F.2d 795 (11th Cir. 1989), or a case where the officer forces the suspect to disrobe and expose himself to the public. See, e.g., Johnson v. State, 613 So.2d 554 (Fla. Dist. Ct. App. 1993). Here, we are faced simply with a brief and discreet look into the pants of a suspect by an officer of the same sex during a search for drugs and for weapons. Officer Hall did not exceed the scope of Meadows' consent by looking into Meadows' pants. And, Officer Hall did not exceed the scope of Hudson's consent – if Hudson, in fact, consented – just by looking into Hudson's pants.

IV.

The district court properly awarded qualified immunity to Officer Hall for his initial stop of Plaintiffs' car and his search of Plaintiffs' car. The district court properly denied qualified immunity to Officer Hall for his search of Hudson without consent from Hudson and for his search of Gaston without consent from Gaston. The district court, however, should have awarded qualified immunity to Officer Hall for

18

his search of Meadows and for the claim that Officer Hall exceeded the scope of consent by looking into Hudson's and Meadows' pants.

On Officer Hall's appeal of the district court's denial of qualified immunity for the search of Plaintiff Hudson, we AFFIRM IN PART and REVERSE IN PART.

On Officer Hall's appeal of the district court's denial of qualified immunity for the search of Plaintiff Meadows, we REVERSE.

On Officer Hall's appeal of the district court's denial of qualified immunity for the search of Plaintiff Gaston, we AFFIRM.

On Plaintiffs' cross-appeal of the district court's grant of qualified immunity for the stop of Plaintiffs' car and for the search of Plaintiffs' car, we AFFIRM.

On Plaintiffs' cross-appeal of the district court's grant of summary judgment to Clayton County, Clayton County Police Chief Ronnie Clackum, and Officer Hall in his official capacity, we DISMISS for lack of jurisdiction.

DISMISSED IN PART, AFFIRMED IN PART, REVERSED IN PART, and REMANDED.