STATE OF NORTH CAROLINA v. TIMOTHY STONE

No. 505A06

(Filed 7 December 2007)

**Search and Seizure— traffic stop—exceeding scope of generic consent to search for weapon and drugs—flashlight search of underwear**

The trial court erred in a possession with intent to sell or deliver cocaine case by denying defendant's motion to suppress cocaine found during a routine traffic stop of a vehicle after an officer's flashlight search inside defendant's underwear even though defendant gave consent to a generic search for weapons or drugs, and defendant is entitled to a new trial, because: (1) the Fourth Amendment protects citizens from unreasonable searches and seizures; (2) the scope of a general consent search does not include consent for the officer to move clothing in order to observe directly the genitals of a clothed suspect; and (3) a reasonable person in defendant's circumstances would not have understood that his general consent to search included allowing the law enforcement officer to pull his pants and underwear away from his body and shine a flashlight on his genitals.

Justice NEWBY dissenting.

Chief Justice PARKER joins in the dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 179 N.C. App. 297, 634 S.E.2d 244 (2006), finding error in an order denying defendant's motion to suppress entered 16 December 2004 by Judge Albert Diaz in Superior Court, Mecklenburg County, reversing a judgment entered 22 March 2005 by Judge J. Gentry Caudill, also in Superior Court, Mecklenburg County, and ordering a new trial. Heard in the Supreme Court 10 January 2007.

*Roy Cooper, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State-appellant.*

*Jarvis John Edgerton, IV for defendant-appellant.*

HUDSON, Justice.

We examine today whether a passenger in a vehicle who gave consent to a generic search for weapons or drugs during a routine

traffic stop subjected himself to an officer's flashlight search inside his underwear. Under the circumstances here, we conclude he did not. We hold that this intrusion violated the defendant's rights under the Fourth Amendment to the United States Constitution, which protects all persons from unreasonable searches and seizures, and entitles defendant Stone to a new trial.

Defendant was indicted for possession with intent to sell or deliver cocaine. Before trial, he moved to suppress the cocaine seized on three grounds: (1) that the original stop was unlawful, (2) that the officer's search exceeded the scope of his consent, and (3) that the officer seized the pill bottle without probable cause.

The only issue before us is the one addressed by the dissent in the Court of Appeals, to wit, whether the search exceeded the scope of defendant's consent. "When an appeal is taken pursuant to N.C.G.S. [§] 7A-30(2), the scope of this Court's review is properly limited to the issue upon which the dissent in the Court of Appeals diverges from the opinion of the majority." *State v. Hooper*, 318 N.C. 680, 681-82, 351 S.E.2d 286, 287 (1987) (citing N.C. R. App. P. 16(b)); *Blumenthal v. Lynch*, 315 N.C. 571, 577-78, 340 S.E.2d 358, 361 (1986)).

In denying defendant's motion to suppress, the trial court made the following findings of fact, which have not been challenged on appeal:

1. At approximately 3:30 a.m. on October 7, 2002, Charlotte-Mecklenburg Police Officer R.E. Correa ("Correa") was on routine patrol in the Nations Ford area of Charlotte, North Carolina.

2. Correa has been a CMPD officer for over six years. The Nations Ford area is part of the Steel Creek Division, where he has worked for three years. This particular area has a high incidence of drug and prostitution offenses.

3. On this date, Correa noticed a burgundy Oldsmobile leaving the Villager Lodge motel. Correa recalled seeing the same vehicle in and around this particular motel on prior occasions. Correa has made numerous drug and prostitution arrests in and around the Villager Lodge motel.

4. Correa began following the Oldsmobile. The Oldsmobile accelerated and turned right onto Farmhurst Drive. Correa estimated that the car was traveling at 50 mph, approximately 15

STATE v. STONE

[362 N.C. 50 (2007)]

mph over the speed limit. Correa, however, did not activate his blue lights or make any effort to stop the car.

5. The Oldsmobile pulled into the parking lot of an apartment complex on Farmhurst Drive. Correa pulled in directly behind the car and shone his spot light on the vehicle.

6. Correa saw two people in the car. He also saw that the vehicle's license plate was displayed on the rear window instead of the bumper. Finally, he noticed that the passenger (in this case, the Defendant) was moving from side to side.

. . . .

10. Correa then turned his attention to the Defendant, who was not wearing a seatbelt. Correa recognized the Defendant, having previously received an anonymous tip that Defendant was a drug dealer. He asked Defendant for identification, but he could not produce one.

11. Correa asked Defendant to step to the back of the vehicle. Defendant complied. Correa asked Defendant if he had any drugs or weapons on his person. Defendant said no, which prompted Correa to ask for consent to search. Defendant gave consent.

12. Defendant was wearing a jacket and a pair of drawstring sweat pants.

13. During the initial search, Correa found $552.00 in cash in the lower left pocket of Defendant's sweat pants. After advising Defendant that it was not safe to carry such a large amount of cash in that manner as it could easily fall out, Correa again asked Defendant if he had anything on him. Once again, Defendant denied having drugs or weapons and authorized Correa to continue the search. By this time, Officer Gerson Herrera ("Herrera") had arrived as the backup officer.

14. Correa checked the rear of Defendant's sweat pants and then moved his hands to the front of Defendant's waistband. At that point, Correa pulled Defendant's sweat pants away from his body and trained his flashlight on the Defendant's groin area. Defendant objected, but by that time, both Correa and Herrera had already seen the white cap of what appeared to be a pill bottle tucked in between Defendant's inner thigh and testicles.

STATE v. STONE

[362 N.C. 50 (2007)]

The trial court thereupon concluded that although the search was "intrusive," it was reasonable under the circumstances. Defendant was convicted as charged, and he appealed both the order denying his motion to suppress and the judgment.

On 5 September 2006, the Court of Appeals held that the trial court erred by denying defendant's motion to suppress and ordered a new trial. The panel held unanimously that the officer had grounds to stop the vehicle in which defendant was riding, and that asking defendant to step out of the vehicle was lawful. A majority held that the flashlight search inside defendant's pants exceeded the scope of defendant's consent. The dissent concluded that because a reasonable person would expect a search under these circumstances to include actions like those taken by this officer, the search was not beyond the scope of defendant's consent.

On appeal, the State maintains that the dissent correctly determined that the search did not exceed the scope of the consent. The defendant argues that it did. We agree.

The Fourth Amendment protects citizens from unreasonable searches and seizures, but permits searches to which a suspect consents. *See Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967) (stating that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions" (footnote call number omitted)). This Court has also held that by waiver and consent to search "free from coercion, duress or fraud, and not given merely to avoid resistance," a defendant relinquishes the protection of the Fourth Amendment, against an unlawful search and seizure. *State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967) (citations omitted).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 250-51, 114 L. Ed. 2d 297, 302 (1991) (citations omitted). The United States Supreme Court has recently affirmed that passengers searched during traffic stops may challenge the constitutionality of those searches. *Brendlin v. California*, —— U.S. ——, ——, 127 S. Ct. 2400, 2406, 168 L. Ed. 2d 132, 139 (2007) (noting that the Court has never indicated "any distinction between driver and passenger that

would affect the Fourth Amendment analysis" of standing to challenge a search of one's person).

To determine whether defendant's general consent to be searched for weapons or drugs encompassed having his pants and underwear pulled away from his body so that his genital area could be examined with a flashlight, we consider whether a reasonable person would have understood his consent to include such an examination. *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302.

This Court has not written an opinion specifically addressing a similar consent search, but it has adopted a dissent from the Court of Appeals in a factually similar case involving a search based on probable cause. *State v. Smith*, 342 N.C. 407, 407, 464 S.E.2d 45, 46 (1995). In *State v. Smith*, the Court of Appeals granted a new trial, holding a search based on probable cause and exigent circumstances unreasonable because the scope and manner of the search were "intolerable." 118 N.C. App. 106, 116, 454 S.E.2d 680, 686, *rev'd per curiam on other grounds*, 342 N.C. 407, 464 S.E.2d 45 (1995), *cert. denied*, 517 U.S. 1189, 134 L. Ed. 2d 779 (1996). Although the defendant in *Smith* did not give consent, the officers had probable cause and exigent circumstances, as well as a specific tip from an informant that defendant "would have the cocaine concealed in his crotch or under his crotch." *Id.* at 112-13, 454 S.E.2d at 684-85. This Court reversed the Court of Appeals for the reasons stated in the dissenting opinion, holding that the scope of the search was not unreasonable. *Smith*, 342 N.C. at 407, 464 S.E.2d at 46. We conclude that *Smith* is inapposite in our evaluation of this search based on consent.

Several cases from other jurisdictions, while not binding upon this Court, have discussed the reasonableness of similar consent searches. "A suspect's consent can impose limits on the scope of a search in the same way as do the specifications of a warrant." *United States v. Milian-Rodriguez*, 759 F.2d 1558, 1563 (11th Cir.) (citation omitted), *cert. denied*, 474 U.S. 845, 88 L. Ed. 2d 112 (1985). Even when an individual gives a general consent without express limitations, the scope of a permissible search has limits. It is constrained by the bounds of reasonableness: what the reasonable person would expect. *United States v. Blake*, 888 F.2d 795, 800-01 (11th Cir. 1989). In *Blake*, the court affirmed the trial court's ruling that "the consent given by the defendants allowing the officers to search their 'persons' could not, under the circumstances, be construed as authorization for the officers to touch their genitals in the middle of a public area." *Id.* at 800. The court went on to explain that "it cannot be said that a rea-

sonable individual would understand that a search of one's person would entail an officer touching his or her genitals." *Id.* at 800-01. *See also Justice v. City of Peachtree*, 961 F.2d 188, 191 (11th Cir. 1992) (citing *Doe v. Calumet City, Ill.*, 754 F. Supp. 1211, 1218 (N.D. Ill. 1990) ("[D]eeply imbedded in our culture . . . is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or touched by others." (footnote call number omitted)).

The United States Supreme Court has said that the "constant element in assessing Fourth Amendment reasonableness in consent cases is the great significance given to widely shared social expectations." *Georgia v. Randolph*, 547 U.S. 103, 111, 164 L. Ed. 2d 208, 220 (2006). The search of these intimate areas would surely violate our widely shared social expectation; these areas are referred to as "private parts" for obvious reasons.

Although the individual's subjective understanding of the scope of his or her general consent to search is not controlling, we note that defendant evidently did not expect this search by flashlight to occur. Defendant said "Whoa" when the officer pulled out his waistband to look, and the court found as fact that defendant objected when the officer "pulled Defendant's sweatpants away from his body and trained his flashlight on Defendant's groin area." His subjective response, while not dispositive of the reasonableness of the search, is an indication that it exceeded his expectations.

The State and the dissent cite *United States v. Rodney*, 956 F.2d 295, 298 (D.C. Cir. 1992), for the proposition that, in a search for drugs, a suspect could reasonably expect some search of his genital area, such as "a continuous sweeping motion over [the suspect's] outer garments." The State and the dissent contend that such touching is no less intrusive than the flashlight-illuminated visual search conducted here.

In *Jimeno*, the United States Supreme Court observed that "the scope of a search is generally defined by its expressed object." 500 U.S. at 251, 114 L. Ed. 2d at 303 (citing *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572 (1982)). The following year in *Rodney*, the D.C. Circuit noted that drug dealers frequently hide contraband in the genital area, and thus, a "request to conduct a body search for drugs reasonably includes a request to conduct some search of that area." 956 F.2d at 298. The *Rodney* court specifically held "only that [the defendant's] generalized consent authorized the kind of 'traditional frisk

search' undertaken here." *Id.* The court noted that it "express[ed] no view on questions involving putatively consensual searches of a more intrusive nature," such as a search involving "direct 'frontal touching' " of a suspect's genitals as disapproved in *Blake. Id.* However, *Rodney*, a federal case, is not binding on this Court, and we have never addressed the issue of whether a deliberate touching of a suspect's genitals through clothing exceeds the scope of a permissive search. Accordingly, we are considering for the first time the question of whether the scope of a general consent search necessarily includes consent for the officer to move clothing in order to observe directly the genitals of a clothed suspect.

We conclude here that a reasonable person in defendant's circumstances would not have understood that his general consent to search included allowing the law enforcement officer to pull his pants and underwear away from his body and shine a flashlight on his genitals. *See Jimeno,* 500 U.S. at 251, 114 L. Ed. 2d at 302. Although these events occurred at 3:30 a.m., the search occurred in the parking lot of an apartment complex, as opposed to a secluded area or police station. Both Officers Correa and Herrera were present during the search. The record does not indicate that the officers asked defendant to step behind a car door, used their bodies to screen defendant from public view, or took other action to shield defendant during the search, as the officers did in *Smith.* 118 N.C. App. at 109, 454 S.E.2d at 682. Nor did they ask defendant to clarify the scope of his consent. Officer Correa testified that he was "not really expecting to find anything, honestly" during his search of defendant, unlike in *Smith* where the officers had specific information that cocaine was hidden in the defendant's crotch. *Id.* at 112-13, 454 S.E.2d at 684.

We conclude defendant's general consent to search did not authorize the officer to employ the very intrusive measures undertaken here. In concluding otherwise and denying defendant's motion to suppress, the trial court focused on reasonableness from the officer's perspective, rather than on the reasonable expectations of the person in defendant's circumstances. *Jimeno,* 500 U.S. at 251, 114 L. Ed. 2d at 302 ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

Because today's decision is necessarily predicated on its facts, *see United States v. Drayton,* 536 U.S. 194, 201, 153 L. Ed. 2d 242, 252 (2002) ("per se rules are inappropriate in the Fourth Amendment con-

text," as "the proper inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.' ") (quoting *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 402 (1991)), we observe that different actions by the officer could have led to a different result. We conclude that the defendant, acting as a "reasonable person," would not have understood that his general consent to a search permitted the officer to pull his pants away and look into his genital area with a flashlight. Accordingly, the Court of Appeals correctly decided that the trial court erred by denying defendant's motion to suppress and correctly held that, as a result, defendant should receive a new trial.

AFFIRMED.

Justice NEWBY dissenting.

The issue presented in this case is whether the trial court reasonably determined that a brief and discreet look into defendant's pants by a law enforcement officer of the same sex was within the scope of defendant's second general consent to a search of his person for drugs. Federal constitutional law requires this decision to be made using a case by case factual analysis, such as the one conducted by the trial court. Although the majority agrees a case by case approach is appropriate, its analysis implies a general consent can never be sufficient. United States Supreme Court precedent does not permit such a general prohibition. The majority also wrongly applies that Court's test by focusing on defendant's perspective rather than that of a third party observer and incorrectly compares the consent search in this case to a probable cause search. Because the record supports the trial court's conclusion that the visual inspection was within the scope of the second consent given in this case, I respectfully dissent.

As defendant has not objected to the trial court's findings of fact, our review of this evidentiary ruling is limited to determining whether those factual findings support the trial court's conclusions of law. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). This Court "accords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision." *Id.* at 134, 291 S.E.2d at 619-20. In contrast, " '[t]he appellate court is much less favored because it sees only a cold, written record.' " *Id.* at 135, 291 S.E.2d at 620 (quoting

*State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 91 S. Ct. 2266, 29 L. Ed. 2d 715 (1971)).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297, 302 (1991) (citations omitted). In *Jimeno*, the United States Supreme Court addressed whether a search of a closed container found within the defendant's vehicle was within the scope of defendant's general consent to search the vehicle. *Id.* at 249-50, 111 S. Ct. at 1803, 114 L. Ed. 2d at 301-02. After noting that "[t]he scope of a search is generally defined by its expressed object," the Court examined the exchange between the police officer and the defendant. *Id.* at 251, 111 S. Ct. at 1804, 114 L. Ed. 2d at 303 (citing *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)). The Court specifically observed that the defendant "did not place any explicit limitation on the scope of the search," that the officer informed the defendant he would be looking for narcotics in the defendant's vehicle, and that "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.* In light of this exchange, the Court determined "it was objectively reasonable for the police to conclude that the general consent to search [the defendant's] car included consent to search containers within that car which might bear drugs." *Id.* No additional, specific consent was necessary.

As indicated by the trial court's findings of fact, all of the factors the Supreme Court found relevant in *Jimeno* are present in this case. Officer Correa sought consent to search defendant for drugs, and defendant provided a general consent without any limitation. Moreover, just as "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container," *id.*, a reasonable person may be expected to understand that drug "[d]ealers frequently hide drugs near their genitals," *United States v. Rodney*, 956 F.2d 295, 297 (D.C. Cir. 1992) (citations omitted).

Additional aspects of the exchange between Officer Correa and defendant indicate that Officer Correa's search was within the scope of defendant's consent. Officer Correa recognized defendant because he had previously received an anonymous tip that defendant was a drug dealer. The search occurred shortly after 3:30 a.m. in an area known for illegal drugs, and the apartment complex parking lot was

STATE v. STONE

[362 N.C. 50 (2007)]

dark enough that Officer Correa needed to shine his spotlight on the car and use a flashlight to look inside defendant's pants. As a result, the search was conducted in relative privacy.

Finally, defendant had opportunities to limit or withdraw his consent that were not present in *Jimeno*. After Officer Correa finished his initial pat-down and frisk of defendant, he talked to defendant about the large amount of money he found in defendant's pocket. When Officer Correa requested permission to search defendant for a second time, defendant was given another opportunity to deny or limit consent, but did not. Officer Correa began his second search by looking in the back of defendant's pants, then moved his hands from back to front along defendant's waistband before looking in the front of defendant's pants. Although he chose not to, defendant was free to withdraw or limit his consent for the second search at any time before Officer Correa noticed the pill bottle in defendant's genital area. The majority asserts that defendant's verbal response to the search shows Officer Correa's action was unexpected. However, the trial court's undisputed finding of fact states that defendant objected to the search only *after* the police officers spotted the container of drugs, not *when* Officer Correa began looking in defendant's pants. As the trial court noted, "[d]efendant's attempt to retract his consent to search occurred only after [Officer] Correa and [Officer] Herrera found the pill bottle hidden in [d]efendant's underwear."

In short, after examining the exchange between Officer Correa and defendant, the trial court correctly determined that the search performed by Officer Correa was within the scope of defendant's consent. It was objectively reasonable for Officer Correa to conclude defendant's unlimited, general consent permitted a brief look into defendant's pants during the second search. Under *Jimeno*, reasonableness must be determined based on an objective standard. 500 U.S. at 250-51, 111 S. Ct. at 1803-04, 114 L. Ed. 2d at 302; *see Rodney*, 956 F.2d at 297 (treating the "typical reasonable person" referenced in *Jimeno* as an observer instead of the officer or the suspect). The majority incorrectly asserts that *Jimeno* requires the scope of consent to be determined from the perspective of the suspect. Asking what *defendant, acting as a reasonable person*, would have *understood that his general consent to a search permitted* is different from asking "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251, 111 S. Ct. at 1803-04, 114 L. Ed. 2d at 302. Indeed, because a defendant who objects to a search as beyond the scope of

his consent will always argue he did not understand his consent included the challenged search, it is difficult to comprehend how the majority's standard is objective at all. The majority admits that its test includes consideration of defendant's "subjective response" to the finding of drugs on his person. On the other hand, it could be readily maintained that, as a third party observer, the trial court is in the best position to determine the reasonableness of the search in light of the exchange. *See Cooke*, 306 N.C. at 134-35, 291 S.E.2d at 619-20.

Subsequent cases applying *Jimeno* confirm that the evidence is sufficient to support the trial court's conclusion that the search conducted here was within the scope of defendant's general consent. In *Rodney*, the United States Court of Appeals for the D.C. Circuit applied *Jimeno* to a fact pattern involving the defendant's general consent to search his body for drugs. The officer's search, which was conducted outside a Washington, D.C. bus station, "involved a continuous sweeping motion over [the defendant's] outer garments, including the trousers covering his crotch area." *Rodney*, 956 F.2d at 296, 298. The officer felt "small, rock-like objects" in the defendant's genital area which were eventually determined to be a cocaine base. *Id.* at 296. Although the court indicated a reluctance to apply *Jimeno* "unflinchingly" in the context of a search of a person, it concluded the defendant's general consent to a body search for drugs authorized the search performed by the officer because "[d]ealers frequently hide drugs near their genitals" and the search was "no more invasive than the typical" *Terry* pat-down frisk for weapons. *Id.* at 297-98; *see Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The majority distinguishes *Rodney* because that case involved a pat-down and frisk instead of a visual look. However, *Rodney* did not hold that only searches involving a thorough pat-down and frisk could be within the scope of a general consent. Instead, *Rodney* listed three types of searches that might fall into a more intrusive category requiring specific consent: full body cavity searches, searches involving "direct ' "frontal touching" ' " of the suspect's genitals, and searches by police officers who are not of the same sex as the suspects. 956 F.2d at 298. *Rodney* did not conclude a search like the one conducted here should be considered intrusive enough to require specific consent.

The majority does not suggest that *Rodney* was incorrectly decided. Accordingly, the question arises whether looking into a suspect's pants is more or less intrusive than touching a suspect's genitals through clothing. The United States Court of Appeals for the

Eleventh Circuit has addressed this issue. That court held that a search in a public airport terminal beginning with a frontal touching of a defendant's genitals through clothing exceeded the scope of the general consent. *United States v. Blake*, 888 F.2d 795, 801 (11th Cir. 1989). However, in a later case, that court, bound by its precedent in *Blake*, concluded that "a brief and discreet look into the pants of a suspect by an officer of the same sex" did not exceed the scope of a general consent to search for drugs. *Hudson v. Hall*, 231 F.3d 1289, 1298 (11th Cir. 2000). Instead, *Hudson* distinguished the search in *Blake* as more intrusive than a quick look into a suspect's pants. *Id.* Although *Hudson* was a 42 U.S.C. § 1983 civil suit, it directly addressed the question at issue in this case: whether a suspect's general consent to a body search for drugs may include a consent to a brief look into the suspect's pants. *See Thirty-First Annual Review of Criminal Procedure*, 90 Geo. L.J. 1087, 1176 n.246 (2002) (citing *Hudson* as applicable in the criminal context for the proposition that "when no limit [is] placed on consent to search [a] person for drugs or weapons, police can search where drugs and weapons [are] kept on [the] person, including inside defendant's pants"); *see also Kidd v. Commonwealth*, 38 Va. App. 433, 447, 565 S.E.2d 337, 344 (2002) (finding a suspect's general consent to a search of his body permitted the officer to pull away the suspect's underwear and look inside).

The majority opinion provides no application of the facts of this case to the factors found relevant in *Jimeno* and the federal cases applying it. Instead, it compares Officer Correa's search with the search conducted in *State v. Smith*, 342 N.C. 407, 464 S.E.2d 45 (1995), *rev'g per curiam* 118 N.C. App. 106, 454 S.E.2d 680 (1995), *cert. denied* 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996), a case involving a probable cause search. This comparison is not useful because as the majority correctly contends elsewhere in its opinion, *Smith* is inapposite. Resolution of this case hinges on whether there was sufficient evidence to support the trial court's conclusion that Officer Correa's search of defendant was within the scope of defendant's consent, not whether the search would have been reasonable if based on probable cause.[1]

---

1. Moreover, assuming arguendo that it is helpful to compare Officer Correa's search to the search in *Smith*, the majority incorrectly suggests the search in *Smith* was more private. In *Smith*, the officer initially used his own body and a car door to shield the defendant from public view. 118 N.C. App. at 109, 454 S.E.2d at 682. However, when the defendant refused to cooperate, the officer " 'walked to the front of [defendant] and held open his underwear . . . and slid it down.' " *Id.* (alterations in original). After noticing a small paper towel under the defendant's scrotum the officer " 'pulled his underwear farther.' " *Id.* More importantly, the search this Court found

STATE v. STONE

[362 N.C. 50 (2007)]

The majority also implies its decision is limited to the facts of this case. In actuality, the majority's analysis is far reaching and effectively dictates that a brief and discreet look into a suspect's pants can never be within the scope of that suspect's general consent to a search for drugs. The majority states "different actions by the officer could have led to a different result" and then suggests several different actions Officer Correa could have taken. The majority believes Officer Correa should have taken steps to shield defendant from onlookers or taken defendant to a "secluded area" or a police station even though there is no evidence that anyone was present during the search besides the two male officers, the defendant, and the driver; and the trial court specifically stated there was "no opportunity for onlookers." Further, the majority believes Officer Correa should have asked defendant to clarify the scope his consent. Finally, the majority might have reached a different result if Officer Correa had specific information that drugs were hidden in defendant's genital area.

It appears the majority believes a brief and discreet look into a suspect's pants would be within the scope of a *general consent* to a search for drugs only if: 1) the officer obtains the suspect's *specific consent* to go to a secluded area or police station; 2) the officer obtains the suspect's *specific consent* to conduct a visual inspection; or 3) the officer has probable cause to search the suspect. Rather than conducting a case by case factual analysis of the scope of the general consent given by defendant, the majority has determined that in all cases involving a brief and discreet look into a suspect's pants, the United States Constitution requires specific consent or probable cause. This approach is inconsistent with federal precedent.

In conclusion, the trial court's findings of fact support its conclusion of law that Officer Correa's search of defendant was within the scope of defendant's consent.

Chief Justice PARKER joins in this dissenting opinion.

---

reasonable in *Smith*, when it reversed the Court of Appeals opinion to the contrary, occurred at 1:30 a.m. in the left turn lane of an intersection. *Id.* I cannot agree with the majority that a 3:30 a.m. search in a private apartment complex parking lot is less private than a 1:30 a.m. search in a street intersection. Especially when the first search involves a look into the suspect's pants, but the second search involves sliding down the suspect's underwear.