STATE OF NORTH CAROLINA v. CRYSTAL ELAINE NEAL

No. COA07-1145

(Filed 6 May 2008)

**Search and Seizure— strip search—consent**

Defendant knowingly and voluntarily consented to the search of her person which revealed cocaine. A reasonable person would have understood from the circumstances and exchanges that the police intended to conduct a strip search.

Appeal by Defendant from order entered 12 January 2007 by Judge James E. Hardin, Jr. and judgment entered 16 November 2006 by Judge Catherine C. Eagles in Superior Court, Guilford County. Heard in the Court of Appeals 1 April 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Charles L. White, for defendant-appellant.*

WYNN, Judge.

To determine whether the scope of a defendant's consent to a search includes the removal of clothing, we apply the standard of " 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"[1] Here, we conclude that the interactions between Defendant Crystal Elaine Neal and the police officers in question would have led a reasonable person to believe that the police would

---

1. *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991).

be conducting a strip search of Defendant. Because Defendant consented to the search and did not withdraw that consent, we affirm the trial court's order denying her motion to suppress evidence gathered subsequent to the search.

On the afternoon of 25 April 2006, Officer Roman Watkins was conducting surveillance of a gas station located in a well-known drug area on East Market Street in Greensboro. Officer Watkins observed a male exit the convenience store at the gas station; he was acting "nervous" and subsequently got in his car and left the gas station "very slowly," failing to use his turn signal when leaving. Officer Watkins followed the vehicle, an older model Honda, and ran a record check of the license plate number. When the check showed that the car was owned by an individual with a suspended driver's license, Officer Watkins pulled the Honda over based on that information and the driver's earlier failure to use his turn signal. He subsequently arrested the driver, Douglas Campbell, for driving while license revoked.

Officer Nicholas Ingram, who responded to Officer Watkins's request for assistance, arrived and asked Defendant, who was seated in the passenger seat of the car, to step out of the vehicle so that it could be searched incident to Mr. Campbell's arrest. No controlled substances or contraband was found in the car. Officer Ingram testified that Defendant was quite nervous when he approached the car, and that he detected a mild odor of marijuana coming from the passenger side of the car, where Defendant was seated. Officer Ingram asked Defendant for her consent to conduct a pat-down search of her person to check for weapons, as well as her consent to search her purse. Defendant agreed, and Officer Ingram used the back of his hand to pat her down, finding no weapons or contraband on her person and $1,095 in small denomination bills in her purse.

The officers then requested a canine unit to assist in the search. After Officer S.J. Langholz arrived with his drug dog, Doc, the two searched the car, and Doc "reacted very well" to the front passenger seat, where Defendant had been sitting. Officer Langholz asked Defendant if she could have the odor of narcotics on her person, and she responded that her clothing could possibly have been in contact with illegal drugs that day. While the search was being conducted, Officers Watkins and Ingram observed Defendant acting very nervously and fidgeting, often putting her hands in and out of the back part of the waistband of her pants. The officers also noticed a "bulge"

STATE v. NEAL

[190 N.C. App. 453 (2008)]

in the back of her pants; they instructed Defendant to keep her hands away from her waistband.

At that point, Officer Watkins informed Defendant that he wanted to conduct a "better" search to determine what was located in the back of her pants and that he had contacted a female police officer for assistance. He asked Defendant if she would mind undergoing a "more thorough" search; she responded that she would not. When Officer Jennifer Mauney arrived, she was informed that Defendant had consented to the search. She took Defendant to a nearby business and conducted a search of Defendant in the women's bathroom, with one of the other officers standing outside the door. Before beginning the search, Officer Mauney explained to Defendant that she would be conducting a more thorough search; Defendant indicated that she understood. Officer Mauney then had Defendant turn sideways, according to police procedure, and asked her to lift her shirt, then unzip her pants and lower them. She then asked Defendant to lower her underwear, at which point a package of what was later determined to be cocaine fell out. According to Officer Mauney's later testimony, Defendant was "very cooperative, extremely cooperative" during the search and at no point expressed any misgivings or argued with Officer Mauney about the scope of the search.

After the trial court denied Defendant's motion to suppress the evidence gathered subsequent to this search, she pled guilty to possession with intent to sell and deliver cocaine, trafficking in cocaine by possession, and trafficking in cocaine by transportation, and was sentenced to a minimum of thirty-five months and a maximum of forty-two months in prison. Defendant now appeals the denial of her motion to suppress, arguing that the trial court erred by concluding as a matter of law that (I) she knowingly and voluntarily gave specific consent to be strip-searched, and (II) there was probable cause sufficient to justify a warrantless search.

These two arguments are closely related; Defendant essentially contends that her consent to be searched was general, not specific, such that its scope did not include a strip search, and alternatively that the search was not supported by probable cause sufficient to overcome the need for a warrant. However, because our conclusion from the record and transcript that Defendant consented to the strip search is dispositive in determining her appeal, we decline to consider the question of whether there was sufficient probable cause.

According to the United States Supreme Court, "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991). In the context of a search upon probable cause, the test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979). Finally, "[t]he scope of the search can be no broader than the scope of the consent. . . . When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness[.]" *State v. Johnson*, 177 N.C. App. 122, 124-25, 627 S.E.2d 488, 490 (quotations and citations omitted), *vacated in part on other grounds*, 360 N.C. 541, 634 S.E.2d 889 (2006).

The Supreme Court of North Carolina recently considered a similar question in *State v. Stone*, in which a police officer pulled a defendant's sweatpants away from his body and shined a flashlight on his genitals, revealing a pill bottle that was later found to contain crack cocaine. 362 N.C. 50, 52, 653 S.E.2d 414, 416 (2007). According to the police officer's testimony in that case, he had no particular suspicion that the defendant was hiding drugs in his genital area; rather, he conducted the search as a matter of course, after a first search turned up nothing. *Id.* at 56, 653 S.E.2d at 419. Moreover, the defendant in *Stone* had agreed to the first search but objected when the police officer pulled away his sweatpants and shined the flashlight on his genitals. *Id.* The search took place in the early morning hours, in the parking lot of an apartment complex. *Id.* at 51-52, 653 S.E.2d at 416.

According to the Court, they were "considering for the first time the question of whether the scope of a general consent search necessarily includes consent for the officer to move clothing in order to observe directly the genitals of a clothed suspect." *Id.* at 56, 653 S.E.2d at 418. Nevertheless, the Court noted that "today's decision is necessarily predicated on its facts," and observed that "different actions by the officer could have led to a different result." *Id.* at 56-57, 653 S.E.2d at 419. For example, in that case, "[the defendant's]

subjective response, while not dispositive of the reasonableness of the search, is an indication that it exceeded his expectations." *Id.* at 55, 653 S.E.2d at 418. The Court ultimately found that, "[t]he search of these intimate areas would surely violate our widely shared social expectation; these areas are referred to as 'private parts' for obvious reasons[,]" and concluded that the search had exceeded the scope of the defendant's consent and was unreasonable. *Id.* at 55-57, 653 S.E.2d at 418-19.

In the instant case, however, a reasonable person would have understood from the circumstances and exchanges between the officers and Defendant that the police intended to conduct a strip search of Defendant. *See Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302. Officer Watkins informed Defendant that he needed to conduct a "better" search to determine what was in Defendant's pants and that a female police officer was on her way. Defendant consented to a "more thorough" search. Officer Mauney asked Defendant if she understood what was going to happen; Defendant responded that she did. Defendant was "extremely cooperative" during the search and never indicated that her consent did not extend to a strip search. Being taken to a women's restroom was another sign that the police intended to search inside of Defendant's clothing.

Moreover, the "scope of the particular intrusion, the manner in which it [was] conducted, the justification for initiating it, and the place in which it [was] conducted," *Bell*, 441 U.S. at 559, 60 L. Ed. 2d at 481, all support a finding of reasonableness. Defendant was taken to a relatively private location, with another police officer standing outside to prevent any strangers from walking in. Officer Mauney did not touch Defendant directly but rather only observed as she removed her own clothing for a short period of time. Accordingly, we find that Defendant knowingly and voluntarily consented to the search conducted by Officer Mauney.

Affirmed.

Judges BRYANT and JACKSON concur.