STATE OF NORTH CAROLINA v. REGINALD McKINLEY WILLIAMS, DEFENDANT

No. COA09-1656

(Filed 18 January 2011)

### 1. Search and Seizure— traffic stop—motion to suppress evidence—good faith mistake of identity—reasonable articulable suspicion—informant tips—revoked driver's license

The trial court did not err in a drugs case by denying defendant's motion to suppress evidence based on its conclusion that officers had a reasonable and articulable suspicion for stopping defendant's vehicle despite the investigator's good faith mistake as to the identity of the driver. Officers had a good faith belief that defendant's driver's license was revoked, in addition to the totality of the information from three confidential informants concerning defendant's possession and sale of illegal narcotics.

**2. Search and Seizure— motion to suppress evidence—reasonable suspicion—probable cause with exigent circumstances —intrusive search**

The trial court did not err in a drugs case by denying defendant's motion to suppress evidence based on its conclusion that the search of defendant's person and seizure of evidence was valid. The investigator had reasonable suspicion to stop defendant and probable cause with exigent circumstances to conduct a full search of defendant's person. Defendant was in possession of illegal narcotics and was attempting to destroy the drugs by swallowing them. Further, there was no intrusive search of defendant's person.

Appeal by defendant from an order entered on or about 7 July 2009 by Judge Quentin T. Sumner in Superior Court, Martin County. Heard in the Court of Appeals 26 May 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

*Michael J. Reece, for defendant-appellant.*

STROUD, Judge.

Reginald McKinley Williams ("defendant") appeals from the trial court's denial of his motion to suppress. We conclude that the trial court had adequate grounds for its denial of defendant's motion to suppress and affirm the trial court's ruling.

I. Background

On or about 23 September 2008, defendant was indicted for possession with the intent to sell or deliver cocaine; maintaining a vehicle for keeping, selling, or delivering cocaine; and attaining the status of habitual felon. On 14 May 2009, defendant moved to suppress certain evidence obtained as a result of a stop and search of defendant conducted by police on 18 March 2008.

Following a hearing on defendant's motion, the trial court denied defendant's motion and issued a written order on or about 7 July 2009. After preserving his right to appeal the trial court's denial of his motion to suppress, defendant pled guilty to possession with the intent to sell or deliver cocaine and attaining the status of habitual felon. The trial court sentenced defendant to a consolidated term of 133 to 169 months imprisonment.

II. Reasonable suspicion to stop defendant's vehicle

**[1]** Defendant first contends that the trial court's conclusion that officers had a reasonable and articulable suspicion for stopping the vehicle in which defendant was a passenger was not supported by the trial court's findings of fact.

It is well established that "[t]he standard of review to determine whether a trial court properly denied a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Tadeja*, 191 N.C. App. 439, 443, 664 S.E.2d 402, 406-07 (2008). "The trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, (citations, brackets, and quotation marks omitted), *appeal dismissed*, 362 N.C. 364, 664 S.E.2d 311-12 (2008). Additionally, "findings of fact to which defendant failed to assign error are binding on appeal." *Id.* Here, defendant "failed to assign error" to any of the trial court's findings of fact in the order denying his motion to suppress. Therefore, the trial court's findings of fact are binding on appeal. *See id.* In its written motion, the trial court made the following uncontested findings of fact:

1. Investigator Charles Brown (hereinafter "Brown") testified he is employed with the Martin County Sheriff's Department as a narcotics investigator. Brown has an extensive background in narcotics investigation, including over 200 arrests for such offenses, and annually attends various trainings in narcotics. Brown has been in law enforcement since 1994, and worked with the Williamston Police Department prior to working with the Sheriff's office.

2. On or about March 18, 2008, Brown was on duty and working along with Martin County Investigator John Nicholson and Williamston Police Detective Chris Garrett. On said date, these officers were conducting surveillance of the Holiday Inn parking lot located in Williamston, North Carolina.

3. Prior to March 18, 2008, Brown received information from three different confidential sources that the defendant engaged in the sale of illegal narcotics in both the Holiday Inn Lounge area and Wings and Things, another local establishment located approximately .2 of a mile from the Holiday Inn.

4. Brown testified that two of the three confidential sources were long time informants who had supplied reliable information to Brown for six or seven years. Brown indicated that information supplied by these two informants had led to numerous arrests and served as the basis for numerous search warrants.

5. Approximately 30 days prior to March 18, 2008, these two confidential informants told Brown that the defendant, Reginald Williams, used both the Holiday Inn Lounge and Wings and Things in Williamston for the sale of narcotics. Said informants also told Brown that the defendant often traveled in a late model Jeep Cherokee. Since defendant's license was revoked, defendant often had another individual named Derrick Smith to drive the said Jeep Cherokee for him.

6. Brown further testified that a third confidential source contacted Brown to complain about the defendant selling narcotics in the open air market of the Holiday Inn Lounge. Brown testified this third source was not an informant, but simply a regular patron of the lounge who considered the lounge to be a family type atmosphere. This third confidential source did not approve of defendant's activities in the lounge.

7. Within a few days of March 18, 2008, Brown spoke by telephone with this third confidential source, and also met with him face to face, concerning defendant's activities in the Holiday Inn Lounge. In addition, on the night of March 18, 2008, this source contacted Brown by telephone and said that the defendant was currently in the Holiday Inn Lounge.

8. Shortly after receiving the telephone call from this third confidential source on March 18, 2008, Brown and other officers set up surveillance of the Holiday Inn parking lot. Brown conducted surveillance from his moving vehicle while Investigator Nicholson parked his stationary vehicle near a used car lot located across the street from the Holiday Inn. Nicholson used binoculars to conduct surveillance.

9. Brown testified he was familiar with defendant, having either arrested him or assisted other officers in arresting defendant. Prior to March 18, 2008, Brown was also aware of defendant's numerous felony convictions for drug offenses, including multiple counts of Possession with Intent to Sell and the Sale of Cocaine. Brown also knew prior to said date of Derrick Smith's involvement with illegal narcotics.

10. Nicholson testified he was positioned approximately 175-200 yards from the main entrance. Nicholson testified that visibility was clear, and the parking lot was well lit.

11. While conducting surveillance of the Holiday Inn parking lot, Nicholson observed two known drug users enter the side entrance of the Holiday Inn. Nicholson testified that this entrance also leads to the lounge area. Nicholson observed these same two individuals exit the Holiday Inn within one to two minutes after entering, which in his training and experience is consistent with the purchase of illegal narcotics. Nicholson has worked in narcotics since 2003 with both the Williamston Police Department and the Martin County Sheriff's Office.

12. After conducting surveillance of the Holiday Inn for approximately 30 minutes, (and within minutes of observing the known drug users leave the Holiday Inn), Nicholson observed the defendant exit the side entrance of the Holiday Inn along with another black male believed to be Derrick Smith. Nicholson did not personally observe the defendant inside the Holiday Inn. Nicholson indicated he had grown up and attended school with the defendant; he was also familiar with Derrick Smith, and had known him for approximately six years.

13. Nicholson observed the defendant enter the passenger side of the late model gray Jeep Cherokee, and the other person believed to be Derrick Smith enter the driver's side. Nicholson stated he believed the driver to be Derrick Smith, although he did not get a clear view of his face prior to entering the vehicle. Nicholson notified Brown that the said individuals were leaving the Holiday Inn parking lot in the gray Jeep Cherokee, with Smith driving, and headed towards Wings and Things. The officers knew Smith's license to be revoked as well.

14. Officers observed the Jeep Cherokee exit the parking lot of the Holiday Inn onto Highway 13/17 and drive towards Wings and Things. As a result, Brown activated his blue lights and initiated a traffic stop of the Jeep Cherokee prior to reaching Wings and Things. Brown testified he initiated the stop based on several factors: 1) the belief of Derrick Smith driving the vehicle with a revoked license; 2) the information they had received from the 3 confidential sources prior to and including March 18, 2008, and corroborated by the actions of the known drug users, Smith and defendant on this occasion.

15. After stopping the Jeep Cherokee, Brown approached the driver of the Jeep Cherokee. After requesting identification, Brown determined the driver to be Vicky Tyrone Spruill, and not Derrick Smith. Spruill appeared to possess a valid license with certain restrictions. Brown testified that both Derrick Smith and Vicky Tyrone Spruill were black males, over six feet tall, medium complexion, and a close hair cut.

16. Brown conducted a pat down "Terry Frisk" search of Spruill for officer safety, as did Nicholson of the defendant. No weapons or illegal contraband were located. Brown testified that defendant encouraged them to search the Jeep Cherokee, and did so based upon defendant's consent.

17. Shortly thereafter, Officer Brandon McKinney arrived with his trained canine, and McKinney walked the dog around the vehicle. McKinney indicated that the dog alerted to several areas of interest, but no direct hits.

18. Brown testified that a search of the interior of the Jeep Cherokee did not reveal any weapons or illegal contraband, although he noticed what appeared to be talcum powder spread all over the interior of the vehicle. Brown testified in his training and experience this powder was used to mask the odor of illegal drugs.

19. At this time, defendant was standing in between the Jeep Cherokee and Brown's vehicle. Brown asked defendant where did he have the drugs hidden, and Brown denied possessing any drugs. Defendant told Brown to search his person, and defendant began to unbuckle his pants in the roadway as if he were about to pull his pants down. Defendant was wearing casual clothing with long pants, a shirt, and a dew [sic] rag on his head. Brown told defendant he did not have to undress in the middle of the roadway.

20. Brown asked defendant to remove the dew [sic] rag from his head. Defendant leaned his head forward as if he were removing the dew [sic] rag, then looked up to the sky and attempted to swallow something. In his training and experience, Brown believed defendant was attempting to swallow illegal drugs. Brown testified that other suspects had attempted to swallow drugs in his presence.

21. As defendant attempted to swallow something, Brown grabbed defendant around the throat, pushed him on the hood of the vehicle, and demanded he spit out whatever he was attempting

to swallow. After several commands and threatening to use the taser, defendant spit out a small plastic baggie that contained four dosage units of cocaine (three powder, one rock). Brown cautioned defendant that his health could be in danger if he had swallowed any narcotics, and defendant stated he had not. Brown thereafter placed defendant under arrest.

Based on these findings, the trial court concluded that "[o]fficers possessed a reasonable and articulable suspicion to justify the investigatory stop of the Jeep Cherokee, based upon the good faith belief that the driver's license was revoked in addition to the totality of the information concerning defendant's possession and sale of illegal narcotics."

Defendant contends that the police officers did not have a reasonable suspicion to justify the stop of defendant's vehicle, based on (1) their mistaken belief that the driver was Derrick Smith, whose license had been revoked, because their description of Mr. Smith was vague or (2) on the information the officers received from their three confidential informants because of the lack of corroboration of that information. Defendant concludes that based on this information and in the totality of the circumstance, "there was no reasonable suspicion that criminal activity was afoot."

A passenger in an automobile has standing to challenge the lawfulness of a police traffic stop. *Brendlin v. California*, 551 U.S. 249, 255-56, 168 L. Ed. 2d 132, 138-39 (2007). Our Supreme Court has held that a reasonable suspicion of criminal activity is the necessary standard for traffic stops. *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440-41 (2008) (citations omitted). The Court has further noted that

[t]he Fourth Amendment protects individuals "against unreasonable searches and seizures," U.S. Const. amend. IV, and the North Carolina Constitution provides similar protection, N.C. Const. art. I, § 20. A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660, 667 (1979). Traffic stops have "been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citation omitted). Under *Terry* and subsequent cases, a traffic stop is permitted if the officer has a "reasonable, articulable

suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570, 576 (2000).

> Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." [*Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)] (citation omitted). The standard is satisfied by " 'some minimal level of objective justification.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989) (quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S. Ct. 1758, 1763, 80 L. Ed. 2d 247, 255 (1984)). This Court requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906). Moreover, "[a] court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists. *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)). *See generally State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008).

*Id.* at 414, 665 S.E.2d at 439-40. "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71, 86 L. Ed. 2d 370 (1985) (internal citation and punctuation omitted). Here, the trial court based its conclusion that Investigator Brown had a reasonable suspicion to stop defendant's Jeep Cherokee on the police investigator's good faith belief that the driver had a revoked license and the information concerning defendant's drug sales, which was provided by the three informants. We will first address the information given to the investigators by the informants.

An informant's tip can provide the needed reasonable suspicion only if it exhibits sufficient "indicia of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990). "In weighing the reliability of an informant's tip, the informant's veracity, reliability, and basis of knowledge must be considered." *State v. Hudgins*, 195 N.C. App. 430, 434, 672 S.E.2d 717, 719 (2009) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543 (1983)). "Where the informant

is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster first-hand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *Id.* In evaluating whether an informant's tip sufficiently provides indicia of reliability, we consider the "totality-of-the-circumstances." *Gates,* 462 U.S. at 233, 76 L .Ed. 2d at 545.

Here, when we consider the totality of the circumstances, the tips provided by the three confidential informants were sufficiently reliable. First, Investigator Brown testified that two of the informants were long-time informants who had supplied reliable information to him for six or seven years and that information supplied by them had led to numerous arrests and had served as the basis for numerous search warrants. Second, the third confidential informant was a regular patron of the Holiday Inn and personally observed defendant selling drugs in the lounge area. Third, Investigator Brown spoke by telephone and face-to-face with the third informant regarding defendant's activities at the Holiday Inn. Finally, Investigators Brown and Nicholson confirmed the veracity of the informants' information. The informants told the investigators that defendant was selling narcotics at both the Holiday Inn Lounge and the Wings and Things and was driven around by another black male in a late-model Jeep Cherokee. Investigator Nicholson saw two known drug users enter the Holiday Inn and then exit shortly after; shortly thereafter, they observed defendant and another black male get into a Jeep Cherokee and exit the Holiday Inn parking lot, driving toward Wings and Things, confirming possible drug activity consistent with the informants' tips. Therefore, these informants' tips exhibit sufficient "indicia of reliability." *Alabama,* 496 U.S. at 330, 110 L. Ed. 2d at 309.

Considering the totality of the circumstances, the trial court's findings of fact show that Investigator Brown had a reasonable and articulable suspicion to stop the vehicle in which defendant was a passenger. As stated above, Investigator Brown was told by the three informants that defendant was selling narcotics at both the Holiday Inn Lounge and Wings and Things and traveled in a late-model Jeep Cherokee. Investigators knew that defendant had a suspended license; defendant often had Derrick Smith drive him around; and that Derrick Smith's license had also been revoked. Investigator Brown was familiar with defendant, having arrested him or assisted other officers in arresting him and was aware of defendant's numerous felony convictions for drug offenses. Investigator Brown also knew Derrick Smith and described him as a black male, over six-feet-

tall, medium complexion, with a close hair cut. On 18 March 2008, the third informant called Investigator Brown to tell him that defendant was at the Holiday Inn Lounge. Shortly after receiving this phone call, the investigators set up surveillance of the Holiday Inn parking lot on 18 March 2008, and Investigator Nicholson observed two known drug users arrive at the Holiday Inn, enter using the side entrance; then two minutes later, he saw the same two individuals exit the Holiday Inn and leave the parking lot, confirming the possibility of drug activity inside the Holiday Inn. As the informants had informed Investigator Brown, Investigator Nicholson then observed defendant and another black male, believed to be Derrick Smith, exit the side entrance to the Holiday Inn and get into a late-model gray Jeep Cherokee. Investigator Nicholson testified that he had grown up and attended school with defendant and was familiar with Derrick Smith, having known him for approximately six years. Investigator Nicholson informed Investigator Brown that the Jeep Cherokee was exiting the Holiday Inn parking lot, and proceeding onto Highway 13/17 going towards Wings and Things. Investigator Brown then initiated a stop of the vehicle. After stopping the gray Jeep Cherokee, Investigator Brown requested identification from the driver and determined that the driver was not Derrick Smith but rather Vicky Tyrone Spruill. Brown testified that, like Derrick Smith, Mr. Spruill was a black male, over six feet tall, medium complexion, and had a close hair cut. Although the investigators did not personally observe defendant selling narcotics, these "specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training" were sufficient to create a reasonable suspicion "that criminal activity [was] afoot" to justify a brief investigatory stop of defendant's vehicle. *Styles*, 362 N.C. at 414, 665 S.E.2d at 439. We emphasize that Investigator Brown needed only a "minimal level of objective justification[,]" *Styles*, 362 N.C. at 414, 665 S.E.2d at 439, to justify his stop of defendant's vehicle.

We also note that the fact that the investigators were mistaken as to the identity of the driver is not dispositive as to whether the stop was lawful, as the United States Supreme Court has held that, "in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government [when] . . . the police officer [is] conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they

always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185, 111 L. Ed. 2d 148, 159 (1990); *See Brinegar v. United States*, 338 U.S. 160, 176, 93 L. Ed. 1879, 1891 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."). We hold that in the totality of the circumstances before us, the stop of defendant's vehicle was reasonable despite the investigator's good faith mistake as to the identity of the driver.

### III. Reasonable suspicion to search defendant's person

**[2]** Defendant argues next that the trial court's conclusion that the search of defendant's person and seizure of evidence was valid was not supported by the trial court's findings of fact. Defendant admits that he gave consent to search his person but, citing *State v. Stone*, 362 N.C. 50, 653 S.E.2d 414 (2007), argues that police exceeded the scope of that consent, by searching his mouth, and then after believing defendant was swallowing something, grabbing and choking him. Our Courts have addressed the issue of whether an officer's search of a person attempting to swallow drugs was reasonable.

In *In re I.R.T.*, 184 N.C. App. 579, 647 S.E.2d 129 (2007), officers were on patrol in an area known for drug activity when they "observed a group of individuals standing outside an apartment building." *Id.* at 581, 647 S.E.2d at 132. Officers approached the group and engaged them in conversation. *Id.* When one officer approached the juvenile respondent I.R.T., the juvenile looked at the officer and quickly turned his head; it appeared to the officer that the juvenile had something in his mouth. *Id.* The officer explained "that he had previously encountered individuals acting evasive and hiding crack-cocaine in their mouths, and those experiences made him suspect [the juvenile] might be hiding drugs in his mouth." *Id.* As for the juvenile, the officer stated that "[b]y his mannerisms, by turning away, by not opening his mouth as he talked, you could tell that he had something in his mouth that he was trying to hide[.]" *Id.* The officer then requested that the juvenile spit out what was in his mouth and he spit out one crack-cocaine rock wrapped in cellophane. *Id.* The juvenile was then placed under arrest "for possession of cocaine with the intent to sell or deliver." *Id.* The juvenile made a motion to suppress, which was denied by the trial court; following a

bench trial, the trial court entered an order adjudicating the juvenile "delinquent for possession of cocaine with the intent to sell or deliver[;]" and the juvenile appealed from that order. *Id.* at 581-82, 647 S.E.2d at 132-33. On appeal, the juvenile argued that the trial court erred in denying his motion to suppress. *Id.* at 583, 647 S.E.2d at 133. This Court held that the juvenile was seized under the circumstances and because of "the juvenile's conduct, his presence in a high crime area, and the police officer's knowledge, experience, and training" the officers had a reasonable suspicion to justify an investigatory seizure of the juvenile. *Id.* at 585, 647 S.E.2d at 135. As to the search of the juvenile, the Court noted that in order for "the police [to] conduct a full search of an individual without a warrant or consent, they must have probable cause and there must be exigent circumstances." *Id.* at 586, 647 S.E.2d at 135 (quoting *State v. Pittman*, 111 N.C. App. 808, 812, 433 S.E.2d 822, 824 (1993)). In affirming the denial of the defendant's motion, the Court found "probable cause based on the same factors in which we found reasonable suspicion to conduct the investigatory seizure" and exigent circumstances, as the juvenile "had drugs in his mouth and could have swallowed them, destroying the evidence or harming himself." *Id.* at 587, 647 S.E.2d at 136.

In *State v. Watson*, 119 N.C. App. 395, 458 S.E.2d 519 (1995), officers were on patrol in an unmarked car in an area where they had made numerous drug arrests when they pulled up at a convenience store and observed the defendant put something in his mouth, which one of the officers believed was crack cocaine. *Id.* at 395-96, 458 S.E.2d at 520. One of the officers knew defendant and when the officers tried to approach the defendant, he tried to enter the store but one of the officers grabbed him. *Id.* at 396, 458 S.E.2d at 520. The defendant began acting very nervous and tried to drink a soft-drink, as if he were trying to swallow something. *Id.* at 396, 458 S.E.2d at 521. The Court specifically noted that, "[i]t is a common practice of drug dealers when they see the police to drop the items or put the items in their mouth and try to conceal it from the officers or attempt to swallow the items to avoid detection." *Id.* One of the officers "grabbed defendant by the back of his jacket and told him to spit out the drugs[,]" applied pressure to the defendant's throat, and "told defendant not to swallow or the drugs would kill defendant." *Id.* The defendant spit out three bags of crack cocaine to the ground and the officer recovered these items. *Id.* Other officers testified that the defendant was a known drug dealer. *Id.* The defendant was indicted "on charges of Resisting a Public Officer and Possession With Intent to Sell or

Deliver a Controlled Substance[;]" the defendant filed a motion to suppress; the trial court denied the defendant's motion; and the defendant pled guilty and appealed the denial of his motion. *Id.* at 397, 458 S.E.2d at 521. On appeal, the defendant argued that "the trial court erred in denying his motion to suppress evidence based on the fact that the evidence was seized in violation of defendant's rights pursuant to the Fourth and Fourteenth Amendment to the United States Constitution." *Id.* This Court, in considering the totality of the circumstances, held that there was a reasonable suspicion to justify detaining the defendant for an investigatory stop because of the defendant's evasive maneuvers to avoid detection, by putting the drugs in his mouth and attempting to go in the store; his location in a high drug transaction area; and one of the officers had previously arrested the defendant on two separate occasions. *Id.* at 398-99, 458 S.E.2d at 522. In addressing the search of the defendant's person, the Court, citing *State v. Smith*, 118 N.C. App. 106, 115, 454 S.E.2d 680, 686, *rev'd* per curiam on other grounds, 342 N.C. 407, 464 S.E.2d 45 (1995), *cert. denied*, 517 U.S. 1189, 134 L. Ed. 2d 779 (1996)[1], noted that "in balancing the scope of the search against exigent circumstances in determining reasonableness, courts have allowed highly intrusive warrantless searches of individuals where exigent circumstances are shown to exist, such as imminent loss of evidence or potential health risk to the individual." *Id.* at 399, 458 S.E.2d at 522. The Court then noted that the evidence showed that "the officer applied pressure to defendant's throat so that defendant would spit out the items in his mouth[;]" the officer "testified that he told defendant to spit out the drugs or the drugs would kill him[;]" and concluded that based on the "officers' experience and training including their familiarity with the area, defendant and the practice of drug dealers to hide drugs in their mouth to elude detection, we cannot state that the officer's action reached a sufficient level of unreasonableness." *Id.* at 399, 458 S.E.2d at 522-23. The Court went on to conclude that

---

1. In *State v. Smith*, 118 N.C. App. 106, 454 S.E.2d 680, the majority held that the officer's search of the defendant was "intolerable in its intensity and scope and therefore unreasonable under the Fourth Amendment." *Id.* at 116, 454 S.E.2d at 686. In Judge Walker's concurrence and dissent, he concurred in the majority opinion in "that there was probable cause and an exigency for a warrantless search of defendant[,]" but dissented "from the Court's holding that the search of defendant was 'intolerable in its intensity and scope and therefore unreasonable under the Fourth Amendment.' " *Id.* at 117, 454 S.E.2d at 686 (Walker, J. dissent). Judge Walker did not argue in his dissent that the majority cited inapplicable law but dissented from the majority's application of that law to the facts of that case. *Id.* Our Supreme Court reversed the majority opinion *per curiam* "for the reasons stated in the dissenting opinion by Judge Walker." *State v. Smith*, 342 N.C. 407, 464 S.E.2d 45 (1995).

probable cause existed to arrest the defendant and affirmed that trial court's denial of the defendant's motion to suppress. *Id.* at 400, 458 S.E.2d at 523.

As in *I.R.T.* and *Watson,* here Investigator Brown had a reasonable suspicion to stop defendant, and probable cause with exigent circumstances to conduct a full search of defendant's person. Probable cause is "a suspicion produced by such facts as [to] indicate a fair probability that the person seized has engaged in or is engaged in criminal activity." *State v. Schiffer,* 132 N.C. App. 22, 26, 510 S.E.2d 165, 167, *disc. review denied,* 350 N.C. 847, 539 S.E.2d 5 (1999) (citing *United States v. Sokolow,* 490 U.S. 1, 7-8, 104 L. Ed. 2d 1, 10-11 (1989)). "Probable cause is a common sense, practical question based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Wilson,* 112 N.C. App. 777, 782, 437 S.E.2d 387, 390 (1993) (citation and quotation marks omitted). "The standard to be met when considering whether probable cause exists is the totality of the circumstances." *Id.* (citation omitted). Here, the totality of the circumstances, including the factors in which we found reasonable suspicion to conduct the investigatory stop, combined with the trial court's additional findings regarding the events that occurred after investigators stopped defendant, establish that Investigator Brown had probable cause to believe that defendant was in possession of illegal narcotics and was attempting to destroy those drugs. Those additional findings include the fact that during the search of defendant's vehicle officers found "talcum powder spread all over the interior of the vehicle[;]" Investigator Brown testified that "in his training and experience this powder was used to mask the odor of illegal drugs[;]" when Investigator Brown began searching defendant's person and under his "dew [sic] rag" for drugs, defendant "attempted to swallow something" at that specific moment; and Investigator Brown testified that "other suspects had attempted to swallow drugs in his presence." The trial court's findings also show exigent circumstances as defendant attempted to swallow four packages of cocaine, in an attempt to destroy that evidence and Investigator Brown "cautioned defendant that his health could be in danger if he had swallowed any narcotics[.] Accordingly, we hold that the warrantless search of defendant's person was reasonable in the circumstances before us.

Defendant contends that *State v. Stone,* 362 N.C. 50, 653 S.E.2d 414 (2007), should be controlling under the facts before us as defendant

had given Investigator Brown consent to search his person but Investigator Brown exceeded that consent. In *Stone*, the Court held that the defendant's general consent to search his person did not authorize police to conduct a very intrusive search of the defendant's person. *Id.* The defendant in *Stone* was stopped by police on the side of a public roadway for a traffic violation. *Id.* at 51-52, 653 S.E.2d at 416. The police officer asked the defendant for consent to search his person and defendant consented. *Id.* at 52, 653 S.E.2d at 416. While searching the defendant's person, the police officer checked the rear of the defendant's sweat pants, then pulled the defendant's sweat pants away from his body, and shined his flashlight on the defendant's groin area. *Id.* The defendant objected, but the officers had already observed "the white cap of what appeared to be a pill bottle tucked in between Defendant's inner thigh and testicles." *Id.* The bottle was confiscated and the defendant arrested. *Id.* The trial court denied defendant's motion to suppress, stating that the search of the defendant's person was reasonable under the circumstance; the defendant was convicted for possession with intent to sell or deliver cocaine; and a divided panel of this Court reversed the trial court's decision, holding "that the flashlight search inside defendant's pants exceeded the scope of defendant's consent." *Id.* at 53, 653 S.E.2d at 416-17. On appeal to our Supreme Court, the State contended that the search did not exceed the scope of the defendant's consent. *Id.* at 53, 653 S.E.2d at 417. The Court noted that "[t]o determine whether defendant's general consent to be searched for weapons or drugs encompassed having his pants and underwear pulled away from his body so that his genital area could be examined with a flashlight, we consider whether a reasonable person would have understood his consent to include such an examination." *Id.* at 54, 653 S.E.2d at 417 (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991)). Citing *Georgia v. Randolph*, 547 U.S. 103, 111, 164 L. Ed. 2d 208, 220 (2006), the Court also noted that "the 'constant element in assessing Fourth Amendment reasonableness in consent cases is the great significance given to widely shared social expectations[,]' " and "[t]he search of . . . intimate areas would surely violate our widely shared social expectation; these areas are referred to as 'private parts' for obvious reasons." *Id.* at 55, 653 S.E.2d at 418. The Court also stated "that 'the scope of a search is generally defined by its expressed object.' " *Id.* In "considering for the first time the question of whether the scope of a general consent search necessarily includes consent for the officer to move clothing in order to observe directly the genitals of a clothed suspect[,]" the Court, in affirming this

Court's decision, concluded "that a reasonable person in defendant's circumstances would not have understood that his general consent to search included allowing the law enforcement officer to pull his pants and underwear away from his body and shine a flashlight on his genitals." *Id.* at 56, 653 S.E.2d at 418-19.

We hold that *Stone* is inapplicable to the facts before us. Although defendant gave consent to search his person, there was no strip search or search of defendant's "private parts" on the side of a public road, as in *Stone*. Here, there was no attempt to conduct such a intrusive search on defendant's person. The findings show that defendant was concealing drugs in his mouth and officers made no request or attempt to search defendant's mouth as defendant contends. Defendant attempted to swallow the drugs, as he was being searched, and Investigator Brown "grabbed defendant around the throat, pushed him on the hood of the vehicle, and demanded he spit out whatever he was attempting to swallow." Here, even if defendant had not given consent for a search of his person, the surrounding circumstances regarding defendant's stop, the search of defendant's vehicle, and defendant's attempt to swallow something during the search of his person gave Investigator Brown probable cause, with sufficient exigent circumstances, to justify the search of defendant's mouth to prevent destruction of evidence and to protect defendant's personal health from ingestion of narcotics. Accordingly, defendant's argument is overruled.

### IV. Conclusion

As reasonable suspicion existed for Investigator Brown to stop defendant and probable cause and exigent circumstances existed to justify the search of defendant's person, including his mouth, we affirm the trial court's denial of defendant's motion to suppress.

AFFIRMED.

Judges McGEE and ERVIN concur.